**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOSEPH CORDOVA,

    Plaintiff,

v.                                                                                                                                                 No. 09cv1055 WJ/WDS

CITY OF BELEN, and
J.P. ABEITA, in his individual
and official capacities as an
employee of the City of Belen, New Mexico,

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment (Doc. 32). Plaintiff brings claims of Fourth Amendment malicious prosecution, state tort claims of false arrest and false imprisonment, and malicious abuse of process in violation of New Mexico common law. Defendants contend that Defendant Abeita is entitled to qualified immunity because he did not violate Plaintiff's rights, or alternatively, that a reasonable officer would not have believed that he was violating Plaintiff's rights. For the reasons set forth herein, the Court denies Defendants' motion.

**BACKGROUND**

Plaintiff Joseph Cordova is a resident of New Mexico and brings this action against Defendant J.P. Abeita, a police officer employed by the City of Belen. Plaintiff filed a civil rights complaint on November 4, 2009, bringing causes of action under 42 U.S.C. §§ 1983 and 1988, and New Mexico state law. The complaint states claims under the Fourth Amendment

against Defendant Abeita (Count I), and state law claims of false arrest, false imprisonment, and malicious abuse of process (Counts II and III). After taking depositions and otherwise conducting discovery, Defendants filed this motion asking for summary judgment on the basis of qualified immunity.

The undisputed facts in this case are as follows.[1] On August 19, 2009, Mr. Cordova and his wife, Bernadine Cordova, were standing by their car observing Mrs. Cordova's nephews during a football practice at Belen Middle School. Her nephews are the children of Mrs. Cordova's sister, Eileen Cordova, and Eileen's ex-husband, Victor Carrasco. At the time of the events in question, there was an ongoing domestic relations case between Eileen Cordova and Victor Carrasco. In that domestic relations case, there was a visitation order in place dated July 30, 2008 that restricted Eileen Cordova's family from visiting with the children except at certain times. Defs.' Ex. 2 (Doc. 32). In addition, there was an order dated October 30, 2008 which allowed the children's grandparents, Mr. and Mrs. Bernie Cordova, to intervene in the case and granted them visitation once a month. Despite these orders, Mr. Cordova and his wife understood from the judge who issued the orders that the extended family was encouraged to attend the children's recreational activities.[2]

When she noticed Mr. and Mrs. Cordova at the football practice, Kimberly Carrasco, Victor Carrasco's wife and the children's stepmother, called the police. After receiving the call from dispatch, Officer Abeita arrived at the middle school practice field and made contact with

---

[1] The exact chronology of many of the events is unclear, but that these events took place at all is not in dispute.

[2] Defendants dispute this statement by objecting to it as hearsay. However, it is not material to the Court's analysis.

2

Mrs. Carrasco. She advised him that she felt threatened by the presence of the Cordovas and that there was a court order in place regulating the conditions under which the Cordovas could have contact with the children. Officer Abeita then initiated contact with the Cordovas and engaged them in conversation, during the course of which he referenced the court order. At some point during this first contact with the Cordovas, he advised them that "it would possibly be—or probably be a good idea that they leave." Pl.'s Ex. 1, J.P. Abeita Dep. at 46:17-19 (Doc. 33 at 29). Mrs. Cordova indicated that she did not feel that they should have to leave and she was not aware of any court order the Cordovas were violating. Officer Abeita returned to Mrs. Carrasco and obtained a copy of the October 30, 2008 visitation order.[3]

When Officer Abeita returned to the Cordovas with a copy of that order in hand, Mrs. Cordova attempted to explain to him that the order had nothing to do with her and her husband. Mr. Cordova felt that his wife was growing confused in her explanations, and intervened in the conversation. The parties engaged in a dispute over whether the court order was the one most recently in place, and how to interpret the order. Officer Abeita decided that the Cordovas should leave the area until further clarification of the order could be obtained from the court. He instructed them to leave the area "several times." Abeita Dep. at 62:21-24.

Apparently, Officer Abeita wished to speak only to Mrs. Cordova during his investigation, and so he repeatedly asked Mr. Cordova to remain silent. Mr. Cordova did not

---

[3] The parties exhibit some confusion regarding which order was presented to Officer Abeita at this point, with Defendants attaching the July 30 order (Doc. 32 at 21) and Plaintiff attaching an October 30 order appointing a guardian ad litem for the children (Doc. 33 at 48), but ultimately the consensus seems to be that the order displayed to the Cordovas during the events in question was entitled "Order Allowing Mr. & Mrs. Bernie Cordova to Intervene, Order to Amend Caption, and Order Establishing Temporary Visitation for Interveners" and dated October 30, 2008 (Doc. 33 at 38). Hereafter in this opinion, "order," "court order," or "visitation order" will reference this document.

remain silent, instead protesting that Mrs. Carrasco could not do this to them and there was no reason they had to leave the area. Mr. Cordova also represented that he would contact a judge he knew, or the judge presiding over the domestic relations case, in order to complain about Officer Abeita's actions. Officer Abeita perceived this as a threat aimed at his job security. At no time did Mr. Cordova's behavior approach violence or physical aggressiveness. However, in the course of his protests, Mr. Cordova engaged in the use of profanity to describe his frustration with the situation. After the first two occasions of profanity, Officer Abeita requested that Mr. Cordova refrain from using profanity, due to the presence of children and families at the practice field, and that he calm down. Upon the third instance of profanity, Officer Abeita placed Mr. Cordova under arrest and charged him with violating Belen Ordinance § 2-1-20 (Interference with Officers). Mr. Cordova was found not guilty of the charge in Belen Municipal Court on October 27, 2009. Pl.'s Ex. 5 (Doc. 33 at 46).

Several disputes of fact remain with respect to this narrative. It is undisputed that Officer Abeita asked the Cordovas to leave the field, but the parties dispute at which point in the conversation this request was made. Plaintiffs allege that Officer Abeita ordered the Cordovas to leave the field as soon as he initiated contact with them. Pl.'s Add'l Fact 10 (Doc. 33 at 8). Defendants maintain that the request was given only after the officer obtained a copy of the visitation order, explained to the Cordovas that the complaining party felt threatened by their presence, and asked Mr. Cordova to refrain from using profanity. Defs.' Facts 10-11 (Doc. 34 at 2). It is also not clear from the record exactly how many times the Cordovas were asked to leave, and at what point in the parties' conversation each request was made.

Similarly, Defendants place much reliance on their contention that Mr. Cordova interrupted the conversation between Officer Abeita and Mrs. Cordova. *See* Defs.' Facts 7-8

(Doc. 32 at 2-3); Defs.' Motion at 8 (Doc. 32); Defs.' Reply at 8 (Doc. 34). However, Plaintiff disputes that he interrupted Officer Abeita at any time or acted in a rude manner. *See* Pl.'s Fact 7 (Doc. 33 at 5); Pl.'s Add'l Fact 19 (Doc. 33 at 9). The parties also disagree on the volume and the tone used by Mr. Cordova in the course of this dispute. Pl.'s Ex. 1, J.P. Abeita Dep. at 49:5, 12-13 (Doc. 33 at 29) ("[Mr. Cordova was] [l]oud and obnoxious . . . . "He was definitely loud."); Pl.'s Ex. 2, Joseph Cordova Dep. at 34:19-20 (Doc. 33 at 37) (testifying that there was no yelling). There is also a dispute over whether anyone, especially the children in the area, was disturbed or concerned by Mr. Cordova's behavior and language. *See* Pl.'s Add'l Fact 23 (Doc. 33 at 9) (no evidence that anyone heard the profanities uttered); Cordova Dep. at 47:18-19 (Doc. 33 at 29) (making reference to disorderly conduct by Mr. Cordova). As explained more fully below, the Court finds that these disputes are material and affect the determination of whether Plaintiff's arrest was constitutionally permissible.

## LEGAL STANDARD

Summary judgment is only appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; it may not rest on mere allegations or denials in its own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986). In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor. *Id.* at 249. A mere scintilla of

evidence in the nonmovant's favor is not sufficient. *Id.* at 252. Analysis of a summary judgment motion requires that the court consider all the evidence in the light most favorable to the nonmoving party. *Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

## DISCUSSION

### I. Fourth Amendment Claims

Police officers "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This is an objective standard and requires no inquiry into the officers' state of mind. *Id.* To defeat the defense of qualified immunity, a plaintiff must prove "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (internal quotation marks omitted). This burden means coming forward with specific facts establishing the violation. *Taylor v. Meacham*, 82 F.3d 1556, 1559 (10th Cir. 1996). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted) (internal quotation marks omitted). The court may take up either prong of this test first "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). If a plaintiff meets this test, then the burden shifts to the defendant to satisfy a third inquiry: the usual summary judgment showing that no material facts are in dispute and the defendant is entitled to judgment as a matter of law. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

Plaintiff argues that he was seized without either reasonable suspicion or probable cause, in violation of the Fourth Amendment. Defendants respond that no investigatory detention took place in this case, and that Plaintiff's arrest was supported by probable cause, meaning that his rights were not violated. The Court agrees that Plaintiff has not put forward specific facts showing that he was subject to an investigatory detention and Defendant Abeita is entitled to qualified immunity on that claim. On the unlawful arrest claim, the Court finds that Plaintiff has met his burden of showing that his clearly established constitutional right to be free of arrest without probable cause was violated. Further, the Court finds that there are material disputes of fact as to whether Defendant Abeita had probable cause to arrest Plaintiff, and therefore summary judgment must be denied.

### A. Investigatory Detention

The police may stop a citizen for an investigatory detention that falls short of a full arrest if they have reasonable suspicion to believe a crime is being committed. *See Terry v. Ohio*, 392 U.S. 1 (1968). "A person 'has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Ojeda-Ramos*, 455 F.3d 1178, 1183 (10th Cir. 2006) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). In cases to which this test is inapplicable, a second test asks "'whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.'" *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)). The relevant inquiry is not whether an officer had intentions of allowing the person to terminate the encounter from the outset, but whether the officer restrained the person's liberty "by means of physical force or show of authority." *Terry*, 392 U.S. at 19 n.16. This was clearly established law in 2009, when the events of this case took

place.

Plaintiff argues that he was seized by Officer Abeita from the moment that the officer, having obtained the visitation order from Mrs. Carrasco, returned to speak to the Cordovas regarding that order. Plaintiff argues that because the officer effected an intrusion upon Plaintiff's liberty by requiring him to either leave the area or further interact with the officer, Plaintiff was seized without reasonable suspicion that he was committing a crime. Plaintiff maintains that the officer lacked reasonable suspicion to believe Plaintiff was violating a court order once the officer had the opportunity to read the order in question and learn that the order was not a restraining order and did not mention Mr. and Mrs. Cordova at all.

The Court agrees with Defendants that Plaintiff was not seized for the purposes of the Fourth Amendment until he was placed in handcuffs and arrested. The Tenth Circuit has rejected the precise argument that Plaintiff raises here:

> Under either of these tests, [the police officer]'s order to leave the bus and claim luggage was not a seizure. . . . [The officer's order] would not have left an impression upon a reasonable person that he was not "free to leave." After all, [the officer] required the passengers to leave the bus, not remain on it.

*Id.* at 1183-84. Although it is probably true that Plaintiff and his wife felt that Defendant was intruding on their liberty to watch their nephews' football practice, an order to leave an area does not constitute a seizure as a matter of law.

Alternatively, Plaintiff was not seized because he did not submit to the officer's authority. A seizure may occur anytime "'the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.* at 1183 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). The Tenth Circuit has articulated a list of "several non-exclusive factors in determining whether an individual has been 'seized,'" which test the

degree of coerciveness of the officer's behavior towards the citizen. *Id.* (citing *Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005)). However, the citizen must submit to the officer's show of authority in order for a seizure to take place. *Id.* at 1186 n.16. Because Mr. Cordova refused to obey the officer's orders to leave the area, to calm down and be quiet, and to stop using profanity, he was not seized until he was arrested and placed in handcuffs. Therefore, the interactions between Mr. Cordova and Officer Abeita must be characterized as a consensual encounter until that point. Because it was consensual, the officer's questioning directed toward Mrs. Cordova was entirely lawful and the Cordovas were not "seized" within the meaning of the Fourth Amendment at that point. In sum, Plaintiff has not put forward specific facts showing that he was subject to an investigatory detention and he has not met his burden in this respect; thus, Defendant Abeita is entitled to qualified immunity on this claim.

**B.    Arrest**

"A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (internal quotation marks omitted). The probable cause inquiry in a qualified immunity case is governed by a purely objective standard, and depends solely "upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). An officer's state of mind is irrelevant. *Id.* at 153. The issue of probable cause in a civil rights lawsuit is most often a question of fact for the jury. *See DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990). Again, this was clearly established law in 2009, when the events of

this case took place.

In this case, Plaintiff alleges that there was no probable cause for his arrest. The complaint alleges that Officer Abieta ordered them to leave the field, even after Plaintiff and his wife explained that the visitation order in question did not apply to them. Compl. ¶¶ 12-16, 19 (Doc. 1). The Complaint further alleges that Officer Abieta threatened Plaintiff with arrest if he and his wife did not leave the field for refusing to obey the unlawful order. *Id.* ¶ 18. This is sufficient to state a claim for unlawful seizure under the Fourth Amendment in light of the clearly established law discussed above. Thus, Plaintiff has satisfied his burden of showing that Defendant Abeita is not entitled to qualified immunity on this claim. The burden then shifts to the Defendants to show that, on the undisputed facts of the case, they are entitled to judgment as a matter of law.

Defendants argue that there was probable cause for Plaintiff's arrest, notwithstanding the allegations in the complaint. Defendants maintain that probable cause existed to arrest Plaintiff for violating Belen Ordinance § 2-1-20, which makes it unlawful to "resist, abuse, molest, hinder, obstruct or refuse to obey . . . any police officer . . . while in the discharge of his or her duty." Defendants point to three different ways in which Plaintiff refused to obey and otherwise obstructed Officer Abeita in the discharge of his duty: first, his failure to leave the scene when instructed to do so; second, his repeated use of profanity after being asked to refrain; and third, his failure to stay quiet and remain calm while Officer Abeita was questioning Mrs. Cordova. Plaintiff responds that these orders were unlawful and/or unreasonable and as such, cannot form the basis for his arrest. The Court agrees that unlawful orders cannot form the basis for an arrest on the grounds of refusing to obey a police officer. Therefore, the Court must inquire in turn whether each of these orders were lawful.

1.      **The Order to Leave the Scene**

Officer Abeita instructed Plaintiff and his wife to leave the practice field because he felt that they were in violation of a court-issued visitation order. Plaintiff argues that the officer's position was objectively unreasonable because the court order could not form the basis for restraining his liberty to watch his nephews' football practice. The Court agrees that no reasonable officer could have interpreted the order to apply to Plaintiff or his wife and prevent them from being present at the field.

On its face, the October 30 visitation order allowed Mr. and Mrs. Bernie Cordova, the children's grandparents, to intervene in the domestic relations case and set forth the conditions under which they would be allowed to visit the children: once month for four hours under supervision. Doc. 33 at 38-39. The order further provided: "Other family members shall not be present at the Interveners' supervised visitations." *Id.* at 40. The visitation order did not otherwise make reference to the Cordovas, and did not contain anything else in the nature of a restraining order. The reference to "[o]ther family members" only pertained to those once-a-month visits and did not otherwise proscribe the family members' conduct. It could thus provide no basis for requiring the Cordovas to leave the practice field on that day.

In *Shroff v. Spellman*, the District Court for the District of Colorado reached a similar conclusion in holding an officer is liable for false arrest when relying on an unreasonable interpretation of a restraining order. No. 07-cv-01466, 2009 WL 222430 (D. Colo. Jan. 27, 2009). The plaintiff in that case had obtained a restraining order against her ex-boyfriend, but the arresting officer read the restraining order to limit the protected party's actions, rather than only the restrained party. *Id.* at *2. He thus arrested the woman for taking a picture of her ex-boyfriend's car. *Id.* The court found that "the protection order, considered as a whole, cannot be

11

read reasonably to include limitations on [the woman]'s actions." *Id.* at *6. In ruling that the officer was liable for false arrest, the court stated that: "Absent a reasonable basis to conclude that [the woman] had violated the terms of the civil protection order, [the police officer] could not conclude reasonably that [the woman] had committed a criminal offense by violating the order." *Id.* Similarly, here no reasonable officer could have concluded that the Cordovas were violating the terms of the visitation order pertaining to Mr. and Mrs. Bernie Cordova.

Thus, I conclude that the order to leave the practice field was unlawful and, as such, could not have established probable cause for Plaintiff's arrest.

### 2. The Order to Refrain from Profanity

Officer Abeita's order that Plaintiff not engage in the use of profanity implicates Plaintiff's First Amendment rights. "[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers. . . . The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 461-63 (1987). In this case, Plaintiff was doing nothing more than objecting to Officer Abeita's interpretation of the visitation order and disputing the officer's conclusion that he and his wife had to leave the practice field. Plaintiff cannot lawfully be required to refrain from speech under these circumstances, even if it is loud or offensive speech. An officer may not get around this rule by arguing that rather than arresting a person for profanity, he arrested the person for not obeying an order to refrain from engaging in profanity. The constitutional right to free speech is the same.

Profanity, when it is disruptive and likely to incite a breach of the peace, may form the basis for a disorderly conduct arrest. However, there must be evidence that the profanity used by

12

the arrestee constituted "'provocative fighting' words which were directed to a non-police officer." *State v. Hawkins*, 991 P.2d 989, 991 (N.M. Ct. App. 1999) (quoting *State v. James M.*, 806 P.2d 1063, 1067 (N.M. Ct. App. 1990)); *see City of Alamogordo v. Ohlrich*, 625 P.2d 1242 (N.M. Ct. App. 1981) (no probable cause to arrest for disorderly conduct in the case of a person screaming obscenities at a police officer); *see also State v. Hawkins*, 991 P.2d 989 (N.M. Ct. App. 1999) (mere presence of other people at scene does not establish probable cause to arrest for use of profanity). Importantly, the state may not prohibit the use of profanity even if limited to circumstances in which children are present. *Cohen v. California*, 403 U.S. 15 (1971). There is no evidence in this case that Plaintiff's words were likely to incite a breach of the peace. Thus, Plaintiff's refusal to obey this order does not establish probable cause for his arrest.

### 3. The Order to Be Quiet

The First Amendment is also implicated in an order which prevents a person from speaking. Officer Abeita's instructions to Plaintiff to stop interrupting him while the officer was discussing the court order with his wife was, effectively, an order preventing speech. An arrest based on the failure to follow this instruction would violate the First Amendment, absent a constitutionally permissible justification. "[A] municipality may not . . . authoriz[e] the police to arrest a person who in any manner verbally interrupts an officer." *City of Houston*, 482 U.S. at 463 n.11. However, if "what is of concern . . . is not simply contentious speech, but rather the possibility that by [speaking to] the officer the person may physically obstruct the officer's investigation," *id.*, then the First Amendment does not prevent an arrest from taking place because of that speech. In other words, the Constitution does not provide a blanket "license to interrupt" official business of officers through verbal conduct. *Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002); *see also Colten v. Kentucky*, 407 U.S. 104 (1972) (no constitutional right to

engage police officers in conversation if they are conducting a lawful investigation); *King v. Ambs*, 519 F.3d 607 (6th Cir. 2008) (arrest for interrupting police to repeatedly tell a third party not to speak to police was constitutionally permissible).

Thus, Plaintiff's arrest was constitutional if it could have been based on what his speech accomplished, i.e. interference with Officer Abeita's investigation, rather than the mere fact that he spoke after being instructed to be quiet, and Defendant would be entitled to qualified immunity. However, fact questions exist as to whether Plaintiff's speech was impeding Defendant's investigation, and as to whether a reasonable officer in Defendant's position would have believed that his investigation was impeded. The parties dispute the volume of Plaintiff's voice, whether he did in fact interrupt Defendant while Defendant was attempting to speak to Mrs. Cordova, and the overall effect of the speech on Defendant's investigation of the court order. Whether Plaintiff was causing a scene and drawing a crowd of concerned bystanders would also be a factor in determining the level of interference he posed to Defendant's investigation, but this is also a matter of factual dispute. It is not even clear from the summary judgment record whether Plaintiff's remarks to Defendant were aimed at assisting in the investigation by explaining that the court order did not apply to him and his wife, or whether Plaintiff's words were simply obstructive comments expressing his frustration in profane terms that objectively prevented Defendant from pursuing his discussion with Mrs. Cordova.

Only if a reasonable police officer could have believed that Plaintiff was interfering with the officer's investigation would Plaintiff's arrest for refusing to be silent have been lawful. But the details of what happened between the parties and Plaintiff's specific conduct, which could be material to this analysis, need to be determined by a fact finder. In short, I find that a reasonable juror could conclude on the undisputed facts that Plaintiff was not interfering with Defendant's

14

investigation. A finding to the opposite effect would be required to grant the instant motion.

### C. Malicious Prosecution

Defendants also move for summary judgment on Plaintiff's claim of malicious prosecution in violation of the Fourth Amendment on the grounds that a malicious prosecution claim requires the absence of probable cause to arrest. Because there are material disputes of fact as to whether Defendant had a constitutionally permissible basis for believing probable cause existed to arrest Plaintiff, Defendants' motion must be denied with respect to this claim as well.

## II. State Law Claims

Plaintiff brings claims under New Mexico state law for false arrest, false imprisonment, and malicious abuse of process. Defendants move for summary judgment on these claims on the grounds that they all require that Plaintiff establish the absence of probable cause for his arrest. Because the Court's findings with regard to the issue of probable cause are equally applicable to the state law claims,[4] Defendants' motion must be denied with respect to Plaintiff's state law claims.

**THEREFORE, IT IS ORDERED THAT** Defendants' Motion for Summary Judgment (Doc. 32) is hereby DENIED, except insofar as Defendant Abeita is entitled to qualified immunity on the claim of an unlawful investigatory detention.

_____
UNITED STATES DISTRICT JUDGE

---

[4] The Court does not find it necessary to address whether the qualified immunity defense applies to the state law claims, because the determination of material issues of fact with regard to the existence of probable cause was made on a summary judgment standard, rather than pursuant to either step of the test for qualified immunity.